# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| WILBERT CALDWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.:  2:07-CV-13-PRC |
| | ) | |
| JOSEPH L. JONES, III, in his official capacity as | ) | |
| Chief Financial Officer of the Gary Community | ) | |
| School Corporation and personally, | ) | |
| DR. MARY STEELE, in her official capacity as | ) | |
| Superintendent of the Gary Community School | ) | |
| Corporation and personally, and | ) | |
| DOCK MCDOWELL, JR., in his official | ) | |
| capacity as one of the legal counsel of the Gary | ) | |
| Community School Corporation and personally, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on (1) Defendant McDowell's FRCP 12(b)(6) Motion to

Dismiss [DE 21], filed by Defendant Dock McDowell, Jr. on April 2, 2007, and (2) a Motion of Mr.

Joseph L. Jones, III and Dr. Mary Steele to Dismiss Pursuant to F.R.C.P. 12(b)(6) [DE 27], filed by

Defendants Joseph L. Jones, III and Dr. Mary Steele on April 2, 2007.  For the reasons set forth in

this Order, the Court grants in part and denies as moot in part the motion of Joseph L. Jones, III and

Dr. Mary Steele (granting the motion as to all of the substantive claims in the Complaint) and denies

as moot the motion of Dock McDowell, Jr., dismissing Plaintiff Wilbert Caldwell's Complaint in

its entirety.

## PROCEDURAL BACKGROUND

Plaintiff Wilbert Caldwell filed this cause of action in the Lake Superior Court in Lake County, Indiana, on December 15, 2006, against Defendants Joseph L. Jones, III, Dr. Mary Steele, and Dock McDowell, Jr. (collectively "Defendants").  In his Complaint, Caldwell alleges (1) U.S. constitutional and federal civil rights claims against the three Defendants in their official capacities under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 (Count I); (2) U.S. constitutional and federal civil rights claims against the three Defendants personally under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 (Count II); (3) a federal civil rights claim for attorney fees against the three Defendants acting in their official capacities under 42 U.S.C. § 1988 (Count III); (4) a federal civil rights claim for attorney fees against the three Defendants personally under 42 U.S.C. § 1988 (Count IV); (5) an Indiana tort claim for false imprisonment against the three Defendants in their official capacities (Count V); and (6) an Indiana tort claim for false imprisonment against the three Defendants personally (Count VI). A copy of the "subpoena" at issue was included as page 4 of the Complaint.

Defendants removed this matter to the United States District Court for the Northern District of Indiana on January 16, 2007.

On April 2, 2007, Defendant McDowell filed "Defendant McDowell's FRCP 12(b)(6) Motion to Dismiss,"  and Defendants Jones and Steele filed a "Motion of Mr. Joseph L. Jones, III and Dr. Mary Steele to Dismiss Pursuant to F.R.C.P. 12(b)(6)."  McDowell also filed a "Motion to Adopt and Incorporate by Reference the FRCP 12(b)(6) Motion to Dismiss of Defendants Jones and Steele Filed April 2, 2007," which was granted by the Court on April 5, 2007.

2

On May 21, 2007, Caldwell filed a separate response to each of the motions to dismiss.

On June 25, 2007, McDowell filed a reply in support of his motion to dismiss as did Defendants Jones and Steele in support of their motion.  On June 25, 2007, McDowell filed a "Motion to Adopt and Incorporate by Reference 'Reply to Plaintiff's Response to Defendants Jones and Steele's FRCP 12(b)(6) Motion to Dismiss and Brief in Support of Defendants Jones and Steele's FRCP 12(b)(6) Motion to Dismiss,'" which the Court granted on July 9, 2007.

The parties in this case consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit.  *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).  To survive a 12(b)(6) motion to dismiss, the complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true.  *E.E.O.C. v. Concentra Health Servs., Inc.*, — F.3d —, 2007 WL 2215764, *2 (7th Cir. Aug. 3, 2007) (quoting *Bell Atlantic*, 127 S.Ct. at 1965, 1973 n.14).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of

3

facts consistent with the allegations in the complaint." *Bell Atlantic*, 127 S.Ct. at 1969.  The Court

accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that

can be drawn therefrom.  *See Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).  In ruling on such

a motion, the Court may consider the complaint, the answer, and any written instruments attached

to the complaint as exhibits.  *See Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 858 (7th

Cir. 2002); *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988).


## ALLEGATIONS IN THE COMPLAINT

At all times material to the allegations in the Complaint, Plaintiff was an employee of the

Gary Community School Corporation ("GCSC").[1]  Defendant Joseph L. Jones, III, was the Chief

Financial Officer of the GCSC, Defendant Dr. Mary Steele was Superintendent of the GCSC, and

Defendant Dock McDowell, Jr. was legal counsel for the GCSC.  Jones worked at the direction of

Steele.

On October 18, 2006, one or more unspecified employees and/or agents of the GCSC

verbally requested that Caldwell voluntarily appear as a witness with respect to a grievance being

heard on October 20, 2006, by the Board of Trustees of the GCSC.  Caldwell declined the request.[2]

---

[1] In their motion, Defendants state that Caldwell was "on the job at the time," citing the Complaint.  Def. Mot., p. 12.  However, the section of the Complaint cited does not provide that Caldwell was "on the job" in that he was performing his job duties at the time but rather that he was "employed as a teamster by the Gary School Corporation." Cmplt., ¶ 9.

[2] In their motion, Defendants state that the hearing was about "an employment related matter."  Def. Mot., p. 12.  However, the Complaint at the paragraphs cited by Defendants provides that one or more employees and/or agents of the GCSC verbally requested that Caldwell appear as a witness with respect to a grievance. Cmplt., ¶¶ 10-12.  There is no indication that the grievance addressed Caldwell's employment.  Rather, the Complaint makes clear that the hearing referenced in the "subpoena" was a pending grievance regarding Brenda Ford.  Cmplt., ¶¶ 15-16.

Subsequently, on October 20, 2006, Jones signed a document purporting to be a "subpoena" and had it served on Caldwell. The document was titled "SUBPOENA," and the caption read, "Before the Gary Community School Corporation . . . IN RE THE MATTER OF BRENDA FORD." Cmplt., p. 4. The "subpoena" provided that, pursuant to Indiana Code § 36-1-4-12, the recipient (unnamed) was "commanded" to appear at a hearing before the Board of Trustees of the GCSC at 4:00 p.m. that same day, October 20, 2006, to testify in an action wherein a grievance hearing was pending before the Board of Trustees with respect to Brenda Ford. The "subpoena" further provided, "If you fail to comply with this Subpoena, appropriate disciplinary action may be initiated by the School Corporation administration." Cmplt., p. 4. Finally, the "subpoena" explained that Indiana Code § 36-1-4-12 provides that "[a] unit may require the attendance of witnesses and the production of documents relevant to matters being considered at meetings of a department or agency." *Id.*[3]

Caldwell alleges that he attended the hearing on October 20, 2006, because he felt compelled to do so, having been "subpoenaed" and threatened by his employer, the GCSC. Although the "subpoena" stated that the matter to which he was being called to testify regarded Brenda Ford, at the hearing, Defendant McDowell did not ask Caldwell any questions related to Brenda Ford but rather about Jim Ford, an individual with a separate grievance. The decision to issue the "subpoena" was made by one or more Defendants. No Defendant had the legal authority to issue the "subpoena." Caldwell alleges that Jones and or Steele personally used the "subpoena" "to threaten and intimidate Plaintiff Caldwell into appearing and testifying before the Board of Trustees." Cmplt., ¶ 29.

---

[3] For purposes of this statute, a "unit" is defined as a "county, municipality, or township." Ind. Code § 36-1-2-23.

5

## ANALYSIS

Pending before the Court are the "Motion of Mr. Joseph L. Jones III and Dr. Mary Steele to Dismiss Pursuant to F.R.C.P. 12(b)(6)" and "Defendant McDowell's FRCP 12(b)(6) Motion to Dismiss." The Court will address each motion in turn.

### A.  Motion of Mr. Joseph L. Jones, III and Dr. Mary Steele to Dismiss Pursuant to F.R.C.P. 12(b)(6)

In their Motion to Dismiss, Defendants Jones and Steele contend that Caldwell cannot state a claim under § 1983 because he has failed to state a claim under the Fourth and Fourteenth Amendments, arguing that those constitutional claims fail because they are based on the issuance of a "subpoena" that did not contain Caldwell's name or compel Caldwell to do anything. Defendants also contend that Caldwell has failed to state a claim for false imprisonment under state law because he was not unlawfully restrained or deprived of his liberty by Defendants without his consent. As the Court has granted Defendant McDowell's motion to incorporate the "Motion to Dismiss of Defendants Jones and Steele," the Court considers the instant motion to dismiss as to all three Defendants. The Court will address separately each of the bases for dismissal asserted by Defendants.

### 1. Claims under § 1983

In Counts I and II of his Complaint, Caldwell asserts claims under 42 U.S.C. § 1983 against Defendants in their official and personal capacities for deprivation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution when a "subpoena," commanding him to appear at a GCSC administrative hearing, was "issued" by one or more of the Defendants. More

6

specifically, Caldwell alleges that none of the Defendants nor the GCSC had authority to issue the "subpoena" under Indiana Code § 36-1-3-17.  The Complaint further alleges that Caldwell only appeared at the administrative hearing because of the threat within the "subpoena" that "appropriate disciplinary action may be initiated by the School Corporation administration" should he fail to appear.  Cmplt., p. 4.

> Section 1983 provides in pertinent part:
>
> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  In seeking dismissal of Counts I and II, Defendants do not argue that their actions were not taken under color of state law.  Rather, Defendants assert that their alleged actions, if taken as true, did not deprive Caldwell of his Fourth and Fourteenth Amendment rights as alleged by Caldwell.


a.  Fourth Amendment

Defendants argue that Caldwell's Complaint fails to state a claim upon which relief can be granted for a violation of the Fourth Amendment because Caldwell's name does not appear anywhere on the "subpoena," the "subpoena" purports to summon no specific person to testify at an administrative hearing to which Caldwell was not a party, and the "subpoena" does not compel Caldwell himself to take action because the document states only that disciplinary action "may be

initiated" by the GCSC.[4]   Defendants reason that Caldwell personally could not have felt "threatened" and thus compelled to appear at the hearing by the "subpoena," as it is described by Defendants as being issued to no one and containing no concrete threat.  Notably, Defendants do not argue that they were authorized to issue the "subpoena" pursuant to Indiana Code § 36-1-4-12, the issuing authority asserted in the "subpoena."  Given the allegations in the Complaint, Caldwell's Fourth Amendment claim must fail.

The Fourth Amendment protects citizens against unreasonable searches and seizures, providing:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV; *see also California v. Hodari D.*, 499 U.S. 621, 624 (1991).  Fourth Amendment protections against unreasonable search and seizure were extended to the states through the Fourteenth Amendment.  *Mapp v. Ohio*, 367 U.S. 643, 654 (1961); *see also Contreras v. City of Chi.*, 119 F.3d 1286, 1290 (7th Cir. 1997).  The protections afforded by the Fourth Amendment apply not only to criminal investigations and police activity but also to the actions of all other governmental employees.  *See Doe v. Heck*, 327 F.3d 492, 509 (7th Cir. 2003).  "Of course, every official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation . . . .  Some such conduct may simply violate state tort law or indeed may be perfectly legal, though unseemly and reprehensible."  *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994) (citing *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir. 1992)).

---

[4] In their briefs, Defendants also argue that Indiana Code § 36-1-4-12, the authority cited in the "subpoena," does not confer a private right of action for its violation.  Because it does not appear from the face of the Complaint that Caldwell has alleged a claim under the statute itself and because Caldwell does not argue in his briefs that he has brought a claim under the state statute, the Court declines to address this argument.

To establish a constitutional violation under the Fourth Amendment, a plaintiff must demonstrate (1) that the defendant's conduct constituted a "seizure" and, if so, (2) that the seizure was "unreasonable." *Leaf v. Shelnutt*, 400 F.3d 1070, 1089 (7th Cir. 2005) (citing *White v. City of Markham*, 310 F.3d 989, 993 (7th Cir. 2002)); *see also Kernats*, 35 F.3d at 1177 (citing *Donovan v. City of Milwaukee*, 17 F.3d 944, 948 (7th Cir. 1994)).   Only government activity that constitutes either a "search" or a "seizure" is regulated by the Fourth Amendment.  *Christensen v. County of Boone, IL*, 483 F.3d 454, 459 (7th Cir. 2007); *Brokaw v. Mercer County*, 235 F.3d 1000, 1010 (7th Cir. 2000).  For this motion to dismiss, the survival of Caldwell's Fourth Amendment claims turns on whether Caldwell has alleged a seizure of his person based on the issuance of the unauthorized "subpoena" and on Caldwell's attendance at the administrative hearing as a result of that "subpoena."  Whether the seizure, if one occurred, was reasonable is not an issue before the Court on this motion.

The Supreme Court stated the test for a Fourth Amendment seizure in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.):  "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  A seizure thus occurs when a government actor "'by means of physical force or show of authority' terminates or restrains" an individual's "freedom of movement through means intentionally applied."  *Brendlin v. California*, 127 S.Ct. 2400, 2405 (2007) (internal quotation marks and citations omitted) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989)).  If there is a show of authority without use of physical force, there can be no seizure unless there is also "actual submission" to the show of authority.  *Id.* (citing *Hodari D.*, 499 U.S. at 626 n.2);

9

*County of Sacramento v. Lewis*, 523 U.S. 833, 944 (1998)); *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968); *Brower*, 489 U.S. at 597); *Christensen*, 483 F.3d at 460.

As Caldwell has not alleged any use of force, the threshold consideration of his Fourth Amendment claims turns on whether he has alleged a show of authority and a submission to that authority.  *See Hodari D.*, 499 U.S. at 626.  The Complaint alleges that a "subpoena" issued on behalf of the GCSC, his employer, was served on Caldwell, and Caldwell responded to the "subpoena" by appearing at the administrative hearing.  On the issue of whether the "subpoena" constitutes a show of force within the meaning of the Fourth Amendment, the parties argue extensively in support of their relative positions the applicability of *Wheeldin v. Wheeler*, 373 U.S. 647 (1963).  Although factually similar to a degree, *Wheeldin* is not dispositive in this case.

In *Wheeldin*, plaintiff Dawson had been served with a subpoena to appear before the House Un-American Activities Committee (the "Committee").  *Id.* at 648.  Dawson alleged in his complaint that the subpoena had been signed in blank, that his name then had been filled in by an investigator without authorization of the Committee, and that no member of the Committee even attempted to delegate the Committee's subpoena power to the investigator.  *Id.* at 648.  He further alleged that the investigator intended to subject Dawson to public shame, disgrace, ridicule, stigma, scorn and obloquy and to "place upon him the stain of disloyalty without any opportunity of fair defense."  *Id.*  Dawson's Complaint specifically alleged that the mere fact of serving the subpoena on him had cost him his job and that the investigator had caused service to be made upon Dawson at his place of employment knowing that he would lose his job.  *Id.*  Rather than simply failing to appear or

responding to the subpoena by giving testimony before the Committee, Dawson filed suit in federal court to have the subpoena declared void.  *Id.*

On the question of whether Dawson could state a claim for damages under the Fourth Amendment on the facts alleged in the Complaint, the Supreme Court in *Wheeldin* answered in the negative:

> Dawson's main reliance is on the Fourth Amendment, which protects a person against unreasonable searches and seizures.  Its violation, he contends, occurred when an unauthorized subpoena was served on him.  But there was neither a search nor a seizure of him.  He was neither arrested nor detained pursuant to any subpoena; nor, so far as the complaint discloses, did he respond to the subpoena and either testify or refuse to testify; nor was the subpoena used to cite him for contempt.  In short, the facts alleged do not establish a violation of the Fourth Amendment.

*Id.* at 649-50 (emphasis added) (citation omitted) (citing *Williams v. United States*, 341 U.S. 97 (1954)).  In other words, the Supreme Court held that there had been no search or seizure of Dawson based solely on the service of the subpoena on him.  In so holding, the Supreme Court articulated various circumstances in the above-cited quotation that, if coupled with the service of the subpoena, may have established a Fourth Amendment search or seizure: (1) arrest pursuant to the subpoena; (2) detention pursuant to the subpoena; (3) a response to the subpoena and testimony or the refusal to give testimony; or (4) a citation for contempt.  *See id.*

In the instant matter, like Dawson in *Wheeldin*, to the extent that Caldwell alleges a Fourth Amendment violation based on the mere issuance and service of the threatening "subpoena" on him, without reference to the fact that he attended the administrative hearing and gave testimony, Caldwell's Fourth Amendment claim must fail.  In their briefs, Defendants correctly note that, like Dawson in *Wheeldin*, Caldwell was neither arrested, detained, nor held in contempt as a result of

11

the "subpoena." However, unlike Dawson, Caldwell did respond to the "subpoena" by attending the administrative hearing and giving testimony. *See Wheeldin*, 373 U.S. at 649-50.

Nevertheless, the Supreme Court's cursory Fourth Amendment analysis in *Wheeldin* is limited to the paragraph cited above, and the court's decision does not provide any further guidance on its reasoning as to what would have been required to constitute a Fourth Amendment violation.[5] Moreover, *Wheeldin* was decided in 1963, prior to the series of cases that has led to the Supreme Court's current Fourth Amendment "seizure" jurisprudence, including *Terry v. Ohio* in 1968, *Mendenhall* in 1980, and *Hodari D.* in 1991, the relevant holdings of which are cited above. No explanation is given in *Wheeldin* as to why the court considered an unauthorized administrative subpoena from the House Un-American Activities Committee as the potential basis for a Fourth Amendment seizure.

Under the modern standards of *Mendenhall* and *Hodari D.*, Caldwell has not stated a claim for a Fourth Amendment seizure because there was not a sufficient show of authority. Although Caldwell responded to the "subpoena" by attending the hearing, the only threat or show of authority

_____

[5] The only case cited by the Supreme Court in its Fourth Amendment discussion in *Wheeldin* is *Williams v. United States*, 341 U.S. 97 (1954), and the case is not cited as direct authority but rather for purposes of comparison. *See Wheeldin v. Wheeler*, 373 U.S. 647, 650 (1963) (citing *Williams* with "Cf." as the introductory signal but with no parenthetical explanation for its citation). The question in *Williams* was whether "a special police officer who in his official capacity subjects a person suspected of a crime to force and violence in order to obtain a confession may be prosecuted under § 20 of the Criminal Code, 18 U.S.C. (1946 ed.) § 52." *Williams*, 341 U.S. at 98. At that time, Section 20 provided in pertinent part:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects, or causes to be subjected, any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution and laws of the United States . . . shall be fined not more than $1,000, or imprisoned not more than one year, or both.

*Id.* at 98. The Supreme Court held that the individual who was being prosecuted for committing assaults for the purpose of extracting confessions was properly found by a jury to be acting under color of law. *Id.* at 99. The court also held that it is constitutional to employ § 20 of the criminal code to sustain a conviction for obtaining a confession by use of force and violence because there is no question that when police seize victims and "beat and pound them until they confess," the victim has been deprived of a right under the Constitution. *Id.* at 100, 102. In its analysis, the court noted that the application of § 20 to "less obvious methods of coercion" and the constitutionality of § 20 for a conviction on such a basis may be called into question. *Id.* at 101.

that compelled him to appear at the hearing was the administrative "subpoena" and the threat of possible disciplinary action by his employer.  However, the threat of job loss is not protected by the Fourth Amendment.  *See Driebel v. City of Milwaukee*, 298 F.3d 622, 642 (7th Cir. 2002) (citing *INS v. Delgado*, 466 U.S. 210 (1984)).  There was no additional threat from law enforcement or other governmental body that would have restrained Caldwell's freedom had he not appeared at the hearing.  In addition, he could have taken other steps prior to the hearing to challenge the "subpoena;" in fact, he could have simply ignored the "subpoena," not presented himself at the hearing, and faced the employment consequences of refusing to appear.

When contrasted with the issuance of an arrest warrant, the threat of the "subpoena" served on Caldwell is too feeble to constitute a Fourth Amendment show of authority.  In *Albright v. Oliver*, the Supreme Court in both the plurality opinion and the concurrence opined that the issuance of an arrest warrant coupled with a subsequent self surrender to authorities constituted a seizure under the Fourth Amendment, with the issuance of the arrest warrant equaling a "show of authority" for the purposes of the Fourth Amendment.  510 U.S. at 271, 276.  In the plurality opinion, Chief Justice Rehnquist noted that the plaintiff in the case, for whom an arrest warrant had been issued, was *not* alleging a Fourth Amendment violation "notwithstanding the fact that his surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment."  *Id.* at 271.  Similarly, in her concurrence, Justice Ginsburg reasoned that "Albright's submission to arrest unquestionably constituted a seizure for purposes of the Fourth Amendment."  *Id.* at 276.  Numerous cases have held that voluntary surrender in response to an arrest warrant is the equivalent of a seizure under the Fourth Amendment.  *See Knight v. Constantino*, No. 1:06CV031-DFH-TAB, 2006 WL 1529567, *4 (S.D. Ind. May 31, 2006) (citing *Albright*, 510 U.S. at 271, 276, 289; *Groom v.*

13

*Fickes*, 966 F. Supp. 1466, 1474-75 (S.D. Tex. 1997); *Niemann v. Whalen*, 911 F. Supp. 656, 668 (S.D.N.Y. 1996); *Amato v. City of Richmond*, 875 F. Supp. 1124, 1144 (E.D. Va. 1994)); *see also Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 199-200 (7th Cir. 1985) (holding that there was *no* Fourth Amendment seizure when a suspect appeared at the police station following a threatening phone call from a police detective and that his appearance was nothing more than a "voluntary action" because, among other reasons, no arrest warrant had been issued).

In contrast with the principle that an arrest warrant and surrender constitute a seizure, the Seventh Circuit has not resolved whether an appearance in court on criminal charges following a summons to appear would amount to a seizure. *See McCullah v. Gadert*, 344 F.3d 655, 661 (7th Cir. 2003). In *McCullah*, the plaintiff complied with a summons in a criminal case and was taken into custody. *Id.* at 661. In reversing the district court's dismissal of the complaint and remanding the case, the Seventh Circuit clarified that an issue to be resolved on remand was whether the summons in that case was the equivalent of a seizure within the meaning of the Fourth Amendment. *Id.* In giving this direction, the court compared *United States v. Dionisio*, 410 U.S. 1, 9-10 (1973), in which the Supreme Court held that a response to a grand jury subpoena does not implicate the Fourth Amendment, with the holding in *Albright* and with a number of other cases dealing with claims of malicious prosecution, which each held that only a summons coupled with additional liberty restrictions such as bond requirements, restrictions on travel, or mandatory reporting would constitute a Fourth Amendment seizure. *See McCullah*, 344 F.3d at 661 (citing *Evans v. Ball*, 168 F.3d 856, 860-61 (5th Cir. 1999); *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998); *Murphy v. Lynn*, 188 F.3d 938, 946 (2d Cir. 1997); *Mahoney v. Kesery*, 976 F.2d 1054, 1060 (7th Cir. 1992)); *see also Becker v. Kroll*, 494 F.3d 904, 915-16 (10th Cir. 2007).

14

Unlike the authority of an arrest warrant or even a criminal summons, which constitutionally implicate an individual's future freedom of movement or liberty, the administrative "subpoena" served on Caldwell with its threat of possible employment-related disciplinary action is not the kind of authority that implicates the Fourth Amendment. *See, e.g.*, *Martinez v. Carr*, 479 F.3d 1292, 1297-98 (10th Cir. 2007) (holding that the issuance of a citation, even under threat of jail if not accepted, does not rise to the level of a Fourth Amendment seizure); *Washington v. County of Rockland*, 373 F.3d 310, 315-16 (2d Cir. 2004) (holding that administrative disciplinary proceedings were inadequate to support a § 1983 claim for malicious prosecution because the civil administrative proceeding did not implicate Fourth Amendment rights); *Britton v. Maloney*, 196 F.3d 24, 29-30 (1st Cir. 1999) (holding that "the issuance of a summons (any more than a testimonial subpoena or a call to jury duty) [does not] constitute a seizure simply because it threatens a citizen with the *possibility* of confinement if he fails to appear in court"); *DePiero v. City of Macedonia*, 180 F.3d 770, 789 (6th Cir. 1999) (holding that the issuance of a traffic ticket was not a Fourth Amendment seizure until such time as the recipient of the ticket fails to appear in court and a bench warrant is issued for his arrest; and that appearing to answer charges in the ticket was not enough to constitute a seizure). When an arrest warrant is issued, if the individual does not submit to the show of authority by self-surrendering, the issuing body has the authority to physically detain the individual by the use of force. Similarly, with a criminal summons, if an individual fails to appear for the hearing, a warrant may issue for his arrest; yet courts have held that a summons with only the future threat of arrest and without additional restraints on liberty cannot establish a Fourth Amendment seizure. Neither the Defendants nor the GCSC had the power to physically require Caldwell to attend the meeting or to retain him in the building once he was there. Moreover, unlike the individual for whom an arrest

warrant or a summons is issued and who appears, Caldwell was not the subject of the administrative hearing being held on October 20, 2006; the hearing was for a grievance related to Brenda Ford. In contrast with someone who faces the threat of the physical detention that flows from an arrest warrant if they do not self-surrender, Caldwell was free to not attend the hearing or to leave the hearing once he appeared.  There is no allegation in the Complaint that, had Caldwell failed to appear at the administrative hearing, criminal prosecution could have followed; and, even if it could have, in keeping with the holding in *Wheeldin*, Caldwell was not actually detained in a criminal proceeding as a result of a failure to appear at the hearing.  Finally, there is no allegation in the Complaint that, once he was present at the hearing, he was physically intimidated or restrained from leaving the premises.  Nor does he allege that he attempted to leave and was prevented from so doing.

In his memorandum, Caldwell argues broadly that a Fourth Amendment seizure occurred because the "subpoena" that was served on him constituted a governmental "show of authority" that restrained his liberty.  Pl. Br., p. 10 (citing *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001) (citing *Terry*, 392 U.S. at 19 n. 16).  In *Driebel v. City of Milwaukee*, the Seventh Circuit declined to follow similar incomplete reasoning previously articulated in *Grow v. City of Milwaukee*, 84 F. Supp. 2d 990 (E.D. Wis. 2000).  The Seventh Circuit held that the district court's holding in *Grow* that "all that is necessary to effectuate a seizure is a 'show of authority' which in some way restrains the liberty of a citizen," failed to apply properly the Supreme Court's decision in *Mendenhall*,[6] which further developed the test for a Fourth Amendment seizure after *Terry v. Ohio* to require that

---

[6] As noted above, the Supreme Court in *Mendenhall* held that a Fourth Amendment seizure occurs "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was *not free to leave*."  466 U.S. at 554 (emphasis added).

the person be unable to leave of his own free will.  *Driebel*,  298 F.3d 622, 641 (7th Cir. 2002) (quoting *Grow*, 84 F. Supp. 2d at 1002).  In *Driebel*, police officers alleged they were seized under the Fourth Amendment when ordered by their superiors to remain on duty or to accompany another officer to the headquarters of the internal affairs division to answer questions in the course of criminal investigations into the officers' actions while on duty.  298 F.3d at 629, 633-34.  In establishing the standard for a Fourth Amendment seizure, the court in *Driebel* held that, "[s]ince the Fourth Amendment does not protect against the threat of job loss, the relevant inquiry must focus on whether reasonable people in the position of the subordinate officers would have feared *seizure or detention* if they had refused to obey the commands given by their superior officers."  *Id*. at 642.

There is no allegation that Caldwell was under threat of seizure or detention had he refused or failed to appear at the administrative hearing, and there was no restraint on Caldwell's freedom of movement.  Other than *Wheeldin v. Wheeler*, Caldwell cites no authority in support of his position that the unauthorized "subpoena" that did not contain his name, that was signed by the Chief Financial Officer of the GCSC, and that threatened possible disciplinary action constitutes a show of authority that can be the predicate for a Fourth Amendment seizure.

Based on the foregoing, Caldwell's Complaint does not state a claim for a violation of his constitutional rights under the Fourth Amendment because he has not alleged facts that constitute a seizure within the meaning of the Fourth Amendment.

b.  Fourteenth Amendment Due Process

The Fourteenth Amendment of the United States Constitution requires that the states not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend.

17

XIV.  In their motion, Defendants argue that Caldwell cannot identify a property or liberty interest of which he was deprived under the Fourteenth Amendment.

It appears from both the Complaint and Caldwell's response brief that Caldwell's reference to the Fourteenth Amendment in the Complaint is incidental only to his Fourth Amendment claims as a vehicle to apply the Fourth Amendment to the states rather than as a separate Fourteenth Amendment due process claim.  There is no mention in the Complaint of "due process," or a deprivation of "life, liberty, or property."  In response to the instant Motion to Dismiss, Caldwell offers no substantive Fourteenth Amendment argument.  Most tellingly, Caldwell's response to Defendants' substantive Fourteenth Amendment argument is that, because Caldwell has stated a claim under the Fourth Amendment for an illegal seizure, he can bring this cause of action under the Fourteenth Amendment because "[t]he Fourth Amendment's right to be free of seizure (e.g. not detained) by the Federal government is applicable to the States by reason of the Fourteenth Amendment."  Pl. Br., p. 10.  In their reply, Defendants do not disagree that the Fourth Amendment is applicable to the states through the Fourteenth Amendment.

Because Caldwell properly relies on the Fourteenth Amendment only to bring his Fourth Amendment claims against alleged state actors and because it appears that the Complaint does not make a substantive claim under the Fourteenth Amendment, the Court denies as moot the motion to dismiss as to the Fourteenth Amendment.

c. § 1983 Conclusion

Because the Court has found that Caldwell has not alleged the deprivation of any federal rights under the Fourth or Fourteenth Amendments, his § 1983 claims must fail. Accordingly, the Court grants Defendants' Motion to Dismiss as to Counts I and II of the Complaint as to all Defendants.

2. *§ 1988*

In Counts III and IV of the Complaint, Caldwell asserts claims against the Defendants in their official and personal capacities under 42 U.S.C. § 1988 for attorney fees and costs. Defendants do not move for dismissal on Counts III and IV of the Complaint in their motion. However, in their reply brief, Defendants raise a substantive § 1988 argument for the first time. It appears that Defendants raise the argument in the reply brief based on Caldwell's procedural recitation in his response brief of the claims of his Complaint, which include two counts brought under 42 U.S.C. § 1988, even though Caldwell makes no substantive § 1988 argument. Although Defendants' § 1988 argument, raised for the first time in the reply brief, is waived for the purposes of their motion, *see Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004), the Court nevertheless dismisses Counts III and IV for attorney fees under § 1988, having dismissed all of Caldwell's § 1983 claims alleged in Counts I and II.

*3. False Imprisonment*

In Counts V and VI of the Complaint, Caldwell asserts claims of false imprisonment under Indiana tort law against Defendants in their official and personal capacities.  Caldwell claims that Defendants falsely imprisoned him at the October 20, 2006 hearing by issuing, or causing to be issued, the "subpoena" without legal authority, thus coercing his attendance and testimony at the hearing through intimidation and threat, depriving him of his freedom of movement, and detaining him against his will and without his consent.

Under Indiana law, false imprisonment is defined as the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent.  *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003).  The Court has not found an Indiana case that addresses the circumstances present in the instant matter, nor has Caldwell offered any cases by way of analogy to argue that a cause of action for false imprisonment may be premised solely on the fact that he felt threatened by the possibility of discipline by his employer such that he attended and remained at the administrative hearing.  Therefore, like the Seventh Circuit in *Adams v. Wal-Mart Stores, Inc.*, which was also faced with a unique set of facts in support of a claim of false imprisonment that did not fall into the common categories of shoplifting and claims against police officers, 324 F.3d 935, 940-41 (7th Cir. 2003), the Court finds that the Restatement (Second) of Torts proves useful in analyzing the scope of the tort of "false imprisonment" and its applicability to the facts in this case.

The Restatement provides that a defendant must act "intending to confine the other or a third person within boundaries fixed by the actor."  Restatement (Second) of Torts § 35.  There are no allegations in the Complaint that Caldwell was confined by physical barriers, physical force, or

threats of physical force nor does the Complaint allege that Caldwell requested or attempted to leave and was then physically prevented from leaving the administrative hearing of his own free will.

However, the Restatement provides that the "confinement may be by submission to duress other than threats of physical force, where such duress is sufficient to make the consent given ineffective to bar the action." *Id*. § 40A.  Such duress may arise from a threat to inflict harm upon a member of the confined's immediate family or his property.  *Id*. § 40A cmt. a.  In this case, Caldwell felt compelled to attend an administrative hearing after being served with a "subpoena" that threatened disciplinary action related to his employment should he refuse to appear at the hearing:  "If you fail to comply with this Subpoena, appropriate disciplinary action may be initiated by the School Corporation administration."  Cmplt., p.4.

This perceived threat does not constitute sufficient duress to make ineffective Caldwell's consent to be present at the hearing such that Caldwell can state a claim for false imprisonment. Upon receiving the "subpoena," notwithstanding the threat of possible disciplinary action for a failure to attend, Caldwell had the option not to appear at the administrative hearing, to disregard the "subpoena," to attempt to "quash" the "subpoena," or to have the "subpoena" declared void. Without suggesting that such allegations would be sufficient to state a claim for false imprisonment in this case, the Court notes the absence of allegations in the Complaint that further threats of discipline for a failure to attend were made after the service of the "subpoena," that any specifically personal threats against Caldwell's employment were made other than the generic statement in the "subpoena," that Caldwell sought not to attend after being served with the "subpoena" but prior to the hearing and that he was threatened with disciplinary action, or that he sought to leave the hearing once present and was then threatened with disciplinary action.  The threat of possible disciplinary

action felt by Caldwell, based solely on the statement in the "subpoena," is insufficient to constitute duress that would have rendered ineffective his consent to be present at the hearing.

Caldwell has failed to state a claim for false imprisonment upon which relief can be granted. Accordingly, the Court grants the motion to dismiss Counts V and VI of the Complaint as to all Defendants. Because a claim of false imprisonment cannot be made based upon the factual allegations in the Complaint, it is unnecessary for the Court to address Defendants' argument on Count VI, made in Part D.5 of the Motion to Dismiss, regarding whether an action against an employee personally is barred by statute when the employee was acting within the scope of employment.

*4. Conclusion*

Because Caldwell has not stated a claim for a Fourth Amendment violation in Counts I and II of the Complaint, because Counts III and IV under § 1988 cannot stand independently in light of the dismissal of the § 1983 claims, and because Caldwell has not stated a claim for false imprisonment, the Court grants the Motion to Dismiss these counts and dismisses Caldwell's Complaint in its entirety against all Defendants. However, the Court denies as moot the Motion to Dismiss any substantive Fourteenth Amendment claims, finding that the Complaint does not attempt to allege any such claims.

**B.  Defendant McDowell's FRCP 12(b)(6) Motion to Dismiss**

In his Motion to Dismiss, McDowell argues that (1) the "subpoena" at issue does not contain Caldwell's name and does not compel Caldwell to do anything; (2) he is entitled to judicial immunity for his judicial actions related to the administrative hearing; (3) an attorney representing his client is not a party to the litigation or proceedings; (4) attorneys acting on behalf of their clients are given broad protection from claims against them by those who believe they may have wrongfully used the judicial process; and (5) immunity, whether absolute or qualified, extends to quasi-judicial proceedings such as hearings held by the board of trustees of a school corporation.

As noted above in the Procedural Background, Defendant McDowell joined in the Motion to Dismiss filed by Defendants Jones and Steele.  As the Court has granted that Motion to Dismiss as to all substantive claims against all of the Defendants, it is unnecessary to address the merits of Defendant McDowell's individual Motion to Dismiss.  Accordingly, the Court denies as moot Defendant McDowell's Motion to Dismiss.

**CONCLUSION**

Based on the foregoing, the Court now **GRANTS in part** and **DENIES as moot in part** the Motion of Mr. Joseph L. Jones, III and Dr. Mary Steele to Dismiss Pursuant to F.R.C.P. 12(b)(6) [DE 27] and **DENIES as moot** Defendant McDowell's FRCP 12(b)(6) Motion to Dismiss [DE 21]. The Court **ORDERS** that Plaintiff Caldwell's Complaint is **DISMISSED** in its entirety as to all Defendants.

So ORDERED this 21st day of September, 2007.


s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT


cc: All counsel of record

24